```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT


JUNIOR FRANCOIS,                    )
                                    )
               Petitioner,          )
                                    )
     v.                             )    Case No. 2:26-cv-13
                                    )
GREG HALE, IN HIS OFFICIAL          )
CAPACITY AS SUPERINTENDENT,         )
NORTHWEST STATE CORRECTIONAL        )
FACILITY; DAVID W. JOHNSTON,        )
IN HIS OFFICIAL CAPACITY AS         )
VERMONT SUB-OFFICE DIRECTOR OF      )
IMMIGRATION AND CUSTOMS             )
ENFORCEMENT, ENFORCEMENT AND        )
REMOVAL OPERATIONS; PATRICIA        )
HYDE, IN HER OFFICIAL CAPACITY      )
AS ACTING BOSTON FIELD OFFICE       )
DIRECTOR, IMMIGRATION AND           )
CUSTOMS ENFORCEMENT,                )
IMMIGRATION AND REMOVAL             )
OPERATIONS; TODD M. LYONS, IN       )
HIS OFFICIAL CAPACITY AS            )
ACTING DIRECTOR, U.S.               )
IMMIGRATION AND CUSTOMS             )
ENFORCEMENT; AND PAMELA BONDI,      )
IN HER OFFICIAL CAPACITY AS         )
U.S. ATTORNEY GENERAL,              )
                                    )
               Respondents.         )
```

## OPINION AND ORDER

This case is before the Court because Petitioner Junior

Francois filed a petition for a writ of habeas corpus under

28 U.S.C. § 2241.  ECF No. 1.  The Federal Respondents oppose

the petition, arguing that (1) this Court does not have

jurisdiction to consider it, and (2) Petitioner has failed to

meet his burden to show his detention is unlawful.  ECF No. 10.
This Court held a status conference on February 2, 2025.  The
Court ordered additional briefing, with petitioner's
supplemental briefing due by February 13, 2026, and respondents'
response due by February 17, 2025.  Both parties timely filed
their supplemental briefs.  *See* ECF Nos. 14, 15.

For the reasons set forth below, the Court GRANTS
Petitioner's habeas petition.

### Factual Background

Petitioner is a 38-year-old native and citizen of Haiti.
ECF No. 1 at 5.  He states that he used the Department of
Homeland Security's Customs and Border Protection ("CBP") One
mobile application to schedule an appointment to present for
inspection at a designated port of entry. ECF No. 14 at 10.  His
petition states that he entered the United States on or about
July 17, 2024, and presented himself at a point of entry near
Tucson, Arizona.  ECF No. 1 at 5-6.  He was there "detained for
several hours, granted humanitarian parole, and issued a Notice
to Appear for immigration court before the Cleveland Immigration
Court on April 2, 2026." *Id.* at 6; *see also* ECF No. 10 at 2
("Because he lacked documents allowing entry into the United
States, Petitioner was inadmissible and was thus issued a Notice
to Appear charging him with removability pursuant to 8 U.S.C.
[§] 1182(a)(7)(A)(i)(I) and ordering him to appear before an

immigration on April 2, 2025. . . Petitioner was granted parole
into the United States.").  The Federal Respondents have
attached a copy of a Notice to Appear ("NTA") that Petitioner
was issued when he was granted parole into the United States:
the NTA provides notice that Petitioner was "required to provide
[DHS] in writing with your full mailing address and telephone
number."  ECF No. 15-5 at 2.  The NTA identified an Ohio address
as Petitioner's address.  *Id.* at 1.  It further provided that:
"You must notify the Immigration Court and the DHS immediately
using Form EOIR-33 whenever you change your address or telephone
number during the course of this proceeding."  *Id.* at 2.

Petitioner went to Springfield, Ohio, upon release from
custody in July of 2024, and he then applied for and received
work authorization on or about October 2024.  ECF No. 1 at 6.
He submitted an asylum application to the Cleveland Immigration
Court on or about April 2025, and that application remains
pending.  *Id.*

Petitioner relocated temporarily to St. Albans, Vermont, in
order to work at a clothing warehouse, and he has resided in
Vermont for the last ten months or so.  *Id.*  He has friends,
family, and community support in Vermont.  *Id.*  Petitioner
reports that, to his knowledge, he has complied with all terms
and conditions of his release into the United States.  *Id.*  The
Federal Respondents contend that Petitioner should have, but did

3

not, notify DHS or the Executive Office of Immigration Review of his change of address when he relocated to St. Albans, Vermont (as required by the NTA).  ECF No. 15 at 6.  Petitioner has no criminal history in the United States or in any other county.  ECF No. 1 at 7.

The Federal Respondents state that on April 11, 2025, CBP "notified Petitioner that his parole would be revoked in seven days by sending an email to the address on file with DHS."  ECF No. 15 at 6.  The Federal Respondents have attached a Declaration of Matthew Kim, a Director with the Office of Information and Technology (OIT) at CBP, with "access to CBP systems that store records of certain email communications from a CBP email domain to outside individuals."  ECF No. 15-4 at 1.  Based upon his "review of CBP systems and email records between CBP and Petitioner," Mr. Kim declares that the CBP systems confirm "that on April 11, 2025, CBP sent Petitioner via email a 'Notice of Termination of Parole.'"  *Id.*  Mr. Kim attaches to his declaration "[a]n email notice that reflects the same language as that provided to Petitioner" but that "is not the exact copy of the email notice that was sent to Petitioner."  *Id.* at 1, 3.  This sample notice states, in relevant parts:

### Notice of Termination of Parole

It is time for you to leave the United States.

4

You are currently here because the Department of
Homeland Security (DHS) paroled you into the United
States for a limited period.  Pursuant to § 1182(d)(5)(A)
and 8 C.F.R. § 212.5(e), DHS is now exercising its
discretion to terminate your parole.  Unless it expires
sooner, your parole will terminate 7 days from the date
of this notice.

If you do not depart the United States *immediately*
you will be subjected to potential law enforcement
actions that will result in your removal from the United
States—unless you have otherwise obtained a lawful basis
to remain here.  Any benefits you receive in the United
States connected with your parole—such as work
authorization—will also terminate.  You will be subject
to potential criminal prosecution, civil fines, and
penalties, and any other lawful options available to the
federal government.

…

Again, DHS is terminating your parole.  Do not
attempt to remain in the United States—the federal
government will find you.  Please depart the United
States immediately.

ECF No. 14-4 at 3.  The Federal Respondents also state that DHS

exercised its discretion on April 18, 2025, and terminated

Petitioner's parole.  ECF No. 15 at 6 (citing ECF No. 15-6, "I94

Document Detail" which states, under "Adjustment of Status" and

"Itinerary": "DHS has exercised its discretion and terminated

this parole on 4/18/2025.").

On January 11, 2026, Petitioner was re-detained by CBP.

ECF No. 1 at 7.  He was processed and ultimately transported to

the Northwest State Correctional Facility (NWSCF), where he is

currently detained.  *Id.*  According to the Federal Respondents,

Petitioner was detained at the Highgate Springs port of entry

after he was refused entry to Canada, and CBP issued Petitioner
a Form I-200 Warrant for Arrest and a Notice of Custody
Determination.  ECF No. 10 at 2-3.

Petitioner asserts that, prior to his detention, he did not
receive written notice of the reason for his re-detention.  ECF
No. 1 at 7.  According to the Federal Respondents, the
Department of Homeland Security ("DHS") provided additional
written notice (beyond the emailed notice mentioned above) to
Petitioner on April 30, 2025, "that his parole was terminated,
noting that Petitioner had previously received written notice
seven days before revocation."  ECF No. 10 at 2.  The Federal
Respondents attach to their Response a "Notice of Intent to
Revoke Employment Authorization," which they assert shows that
Petitioner had previously received written notice his parole was
terminated, and which they also assert served as written notice
itself because it stated: "This notice is an additional reminder
that your status in the United States will be unlawful after
your parole is terminated unless you have obtained some other
status." *Id.*  The Federal Respondents assert that "[t]his
notice was sent to Petitioner at an address on East Rose Street
in Springfield, Ohio,"—the address that Petitioner had provided
to DHS on his Form I-765 (Application for Employment

Authorization).  ECF No. 15 at 7.[1]  Petitioner does not concede that this "Notice of Intent to Revoke Employment Authorization" notified him of the termination of his parole, and "maintains that he never received any notice revoking his parole."  ECF No. 14 at 3.

Petitioner filed a Petition for Writ of Habeas Corpus in this Court on January 26, 2026, asserting the following claims for relief: (1) a violation of the INA and Federal Regulations (ECF No. 1 at 16); (2) that the revocation of humanitarian parole was in violation of the Due Process Clause of the Fifth Amendment (*id.* at 16-17); and (3) a violation of the Administrative Procedure Act (APA) (*id.* at 17-18).  That same day, this Court issued a Temporary Restraining Order and Order to Show Cause which, among other things, ordered that "Petitioner shall not be removed from the District of Vermont pending further order of this court."  ECF No. 6 at 2.

The Federal Respondents filed an opposition to the emergency petition for habeas corpus on January 30, 2026, arguing that: (1) this Court lacks subject matter jurisdiction to review DHS's decision to revoke Petitioner's parole; and (2) revocation of Petitioner's parole was lawful because he received

---

[1] The Federal Respondents filed, as a supplemental exhibit, a copy of Petitioner's application for employment authorization, reflecting his identification of the Ohio address as his mailing address.  ECF No. 16-2.

all of the process he was due under the statutory and regulatory framework, as well as under the Fifth Amendment.  ECF No. 10. In the event that this Court does find for the Petitioner, the Federal Respondents assert that any potential relief should be limited to a hearing in immigration court (rather than immediate release).  *Id.* at 8.

The Court held a status conference on February 2, 2026. The Court inquired about the nature of what, if any, notice of the revocation of his parole the Federal Respondents provided to the Petitioner.  The Court also asked the parties to discuss existing caselaw surrounding the legal issues presented by this petition, including the First Circuit's decision in *Doe v. Noem*, 152 F.4th 272, 285-87 (1st Cir. 2025).  Given the factual and legal complexities presented, and with Petitioner's request for an opportunity to respond to the Federal Respondents' response to the petition, the Court ordered additional briefing to be completed in two weeks.  On February 11, 2026, the Court also ordered the parties to address a recent case in this district: *Graterol Ruiz v. Trump*, No. 2:26-cv-00012, 2026 WL 323254, 2026 U.S. Dist. LEXIS 25629 (D. Vt. Feb. 6, 2026).  Both parties timely filed their supplemental briefs.  *See* ECF Nos. 14, 15.

## Discussion

## I.    Jurisdiction and Legal Standard

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, 28 U.S.C. § 2241(c)(3); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

The Federal Respondents argue that this Court does not have jurisdiction over the present petition, because the Immigration and Nationality Act ("INA") precludes judicial review of the discretionary decision to revoke Petitioner's parole, as Section 1252(a)(2)(B)(ii) of the Act proves that "[n]otwithstanding any . . . habeas corpus provision . . . no court shall have jurisdiction to review--. . . any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B). Assuming *arguendo* that the decision to revoke parole is firmly within the discretion of immigration authorities, as the Federal Respondents assert,[2] it does not follow that the procedure

---

[2] Though it does not reach the issue in this case, the Court is aware that other courts have issued compelling holdings

surrounding the substantive decision of whether to revoke parole
would also be beyond this Court's jurisdiction under
§ 1252(a)(2)(B)(ii).  "Regardless of whether the substantive
revocation decision is shielded from judicial review, no party
has provided authority to suggest that the *procedure* surrounding
the substantive decision is similarly shielded."  *Mantena v.*
*Johnson*, 809 F.3d 721, 728 (2d Cir. 2015).  Here, Petitioner is
not asking this Court to review a final order of removal.  He is
not even requesting an affirmative grant of parole from this
Court.  This case is thus distinguishable from *Giammarco v.*
*Kerlikowske*, 665 F. App'x 24 (2d Cir. 2016) (summary order), in
which the petitioner (who had previously been removed as an
aggravated felon) sought authorization for temporary reentry so
that he could provide testimony, where his applications for
parole, a visa waiver, and a visitor visa had been denied and
the Second Circuit found no subject-matter jurisdiction.

---

otherwise.  The Second Circuit has rested "§ 1252(a)(2)(B)(ii)'s
bar on jurisdiction" as applying "only to those decisions where
Congress has expressly 'set out the Attorney General's
discretionary authority in the statute,'"  *Ozturk v. Hyde*, 136
F.4th 382, 395 (2d Cir. 2025) (quoting *Kucana v. Holder*, 558
U.S. 233, 247 (2010)), and other courts have pointed out that
the parole statute—which requires that the Secretary make an
individualized determination that the specific purposes of
parole have been served—may not squarely place the decision of
parole revocation within what is "discretionary."  *See, e.g., Y-*
*Z-L-H v. Bostock*, No. 3:25-CV-965 (SI), 792 F. Supp. 3d 1123,
2025 U.S. Dist. LEXIS 130216, 2025 WL 1898025, at 1137-1139 (D.
Or. July 9, 2025).

Here, Petitioner argues that the revocation of his parole was done in violation of the process set out by the relevant statutes and regulations, and in violation of his Due Process Rights.  Other district courts in the Second Circuit and elsewhere have asserted jurisdiction in such cases.  *See, e.g., Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141-142 (W.D.N.Y. 2025) (finding that § 1252(a)(2)(B)(ii) did not strip jurisdiction to review due process rights for parole revocation); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 U.S. Dist. LEXIS 160866, 2025 WL 2402780, at *7-9 (E.D.N.Y. Aug. 19, 2025), *appeal docketed*, No. 25-3029 (2nd Cir. Dec. 2, 2025) (holding that § 1252(a)(2)(B)(ii) "does not preclude the Court from reviewing the lawfulness of the revocation of Petitioner's parole."); *Bernardo Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 U.S. Dist. LEXIS 233542, 2025 WL 3443584, at *10-11 (D. Minn. Dec. 1, 2025) ("Whether Respondents complied with mandatory procedures in exercising their discretionary power is not precluded from review by § 1252(a)(2)(B)(ii)."). The Court therefore finds that it has jurisdiction over the pending claims.

## II.  Substantive Claims

Both Petitioner and the Federal Respondents agree that Petitioner is subject to the provisions of 8 U.S.C. § 1225(b)(2).  Neither party is arguing that Section 1225(b)(2)

11

ordinarily requires a bond hearing or allows for individuals to
be released on bond.  Accordingly, the Court below addresses
Petitioner's first and second claims: that his detention is in
violation of the INA and federal regulations, and that his
detention is in violation of the Fifth Amendment.  ECF No. 1 at
16-17.  Because the Court finds for Petitioner on these two
claims, it does not address his claim under the Administrative
Procedure Act.

      Under 8 U.S.C. § 1182(d)(5)(A), the Secretary has
discretion to parole non-citizens into the United States.  The
provisions states in full:

> The Secretary of Homeland Security may… in his
> discretion parole into the United States temporarily
> under such conditions as he may prescribe only on a
> case-by-case basis for urgent humanitarian reasons or
> significant public benefit any alien applying for
> admission to the United States, but such parole of
> such alien shall not be regarded as an admission of
> the alien and when the purposes of such parole shall,
> in the opinion of the Secretary of Homeland Security,
> have been served the alien shall forthwith return or
> be returned to the custody from which he was paroled
> and thereafter his case shall continue to be dealt
> with in the same manner as that of any other applicant
> for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).  The parties agree that Petitioner in
this case was granted parole.

      To terminate the previously granted parole, the agency must
comply with the applicable regulatory and statutory

requirements.  As set forth in 8 C.F.R. § 212.5(e)(2)(i), which

governs the "[t]ermination of parole":

> In cases not covered by paragraph (e)(1) of this
> section,[3] upon accomplishment of the purpose for which
> parole was authorized or when in the opinion of one of
> the officials listed in paragraph (a) of this section,
> neither humanitarian reasons nor public health benefit
> warrants the continued presence of the alien in the
> United States, parole shall be terminated upon written
> notice to the alien and he or she shall be restored to
> the status that he or she had at the time of parole.
> When a charging document is served on the alien, the
> charging document will constitute written notice of
> termination of parole, unless otherwise specified.
> Any further inspection or hearing shall be conducted
> under section 235 or 240 of the Act and this chapter,
> or any order of exclusion, deportation, or removal
> previously entered shall be executed.  If the
> exclusion, deportation, or removal order cannot be
> executed within a reasonable time, the alien shall
> again be released on parole unless in the opinion of
> the official listed in paragraph (a) of this section
> the public interest requires that the alien be
> continued in custody.

8 C.F.R. § 212.5(e)(2)(i).

## A. Process Due Under the INA and Regulations

Petitioner argues that, though he "dutifully complied with

all ICE reporting requirements and has been found to have not

been provided notice of the single missed hearing," his parole

was revoked "without notice or explanation" in violation of 8

C.F.R. § 212.5(e)(2).  ECF No. 1 at 9-10.  The Federal

---

[3] Paragraph (e)(1) provides for the automatic termination of
parole without written notice where the noncitizen has either
departed from the United States, or at the expiration of time
for which the parole was authorized.  The parties do not cite to
this paragraph or suggest that either circumstance applies here.

Respondents respond that Petitioner received written notice of revocation of his parole, and no additional process is required. ECF No. 10 at 5-6.

Here, then, the Court must decide only a narrow issue:[4] in detaining Petitioner after revoking his parole, was it sufficient for the Federal Respondents to only provide written notice of the decision—nothing more?  Because both the relevant statute (8 U.S.C. § 1182(d)(5)(A)) and regulation (8 C.F.R. § 212.5(e)(2)(i)) required the Federal Respondents to determine that the purpose for which the Petitioner was paroled into the United States had been "served" (whether that was a specific purpose for his entry or, if not, because "neither humanitarian reasons nor public benefit warrants [his] continued presence" in the United States), the Court finds that mere notice was insufficient.  Nor is there any information here that hints at any explanation for why the parole was revoked.  Other district courts, when similarly faced with no explanation for the revocation of parole, have been skeptical, and this Court now follows their analysis in determining that a detention based

---

[4] *See Bernardo Gabriel B.M. v. Bondi,* No. 25-cv-4298 (KMM/EMB), 2025 U.S. Dist. LEXIS 233542, 2025 WL 3443584, at *15-18 (D. Minn. Dec. 1, 2025)("Ultimately, what the requirements of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i) mean for the granularity of Respondents' parole revocation decisions is not for the Court to say here. However, Respondents must follow the law when they make such decisions.").

upon the revocation of parole with notice and nothing more is
unlawful.  For example, the district court in *Bernardo Gabriel*
*B.M. v. Bondi*, when faced with the exact same language of a
"Notice of Termination of Parole" as the sample email at issue
in this case, found a likelihood of success on the merits where:

> The Notice is the only piece of evidence in the
> record reflecting the termination of Petitioner's
> parole.  It neither discusses nor mentions the
> fulfillment of the purpose of the parole granted here.
> . . . It provides no explanation of why the parole was
> revoked.  And Respondents do not point to any
> additional documentation indicating that such a
> determination was made, nor do they provide any
> affidavit attesting to that fact.  The most reasonable
> (perhaps the only reasonable) inference is that
> Respondents simply implemented a mass termination of
> parole without any assessment that the purpose of
> Petitioner's parole has been served or that there are
> no longer humanitarian reasons or any public benefit
> supporting his continued presence.  Without any
> suggestion that such a determination occurred,
> Respondents could not have complied with §
> 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking
> Petitioner's parole.  This means that the revocation,
> and, as counsel for Respondents conceded at the
> hearing, Petitioner's detention, is unlawful.

*Bernardo Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025
U.S. Dist. LEXIS 233542, 2025 WL 3443584, at *15 (D. Minn. Dec.
1, 2025).  This Court reaches the same conclusion when faced
with the same language in the emailed "Notice of Termination of
Parole."  Instead of a determination that the purpose for which
parole was granted was fulfilled, it may even be that the
Federal Respondents simply "'issued a blanket termination of
parole' to noncitizens throughout the country which does not

constitute a case-by-case determination." *Fernandez Vitora v. Raycraft*, No. 1:26-cv-76, 2026 U.S. Dist. LEXIS 21260, at *8 (W.D. Mich. Feb. 2, 2026).

The Federal Respondents cite to the First Circuit's recent decision in *Doe v. Noem*, 152 F.4th 272, 285-287 (1st Cir. 2025), as well as the Supreme Court's grant of stay pending the outcome of an appeal of the district court decision in *Noem v. Doe*, 605 U.S. --, 145 S. Ct. 1524 (May 30, 2025). The Court has given serious consideration to both of these decisions (which involved addressing a likelihood of success on the merits as to whether the statute requires "individualized termination of parole" as well as whether the termination of parole early for certain existing program recipients was arbitrary and capricious) and has weighed whether they determine the outcome of this case. Ultimately, the Court does not find that these decisions are binding upon the circumstances of this case, and the Court will follow other persuasive reasoning that has distinguished the *Noem* case. As the district court explained in *Bernardo Gabriel B.M. v. Bondi*:

> Relying on *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), Respondents argue that no determination was necessary to revoke Petitioner's parole. In *Doe*, the First Circuit considered, as relevant here, the specific issue of if § 1182(d)(5)(A) required the government to revoke parole on a case-by-case basis, concluding that it did not. *Id.* at 285-87. But not merely is *Doe* only persuasive authority in this case, it is distinguishable on multiple grounds. First,

16

unlike here, the government in *Doe* did make a
determination that the purpose of the plaintiffs'
parole had been accomplished. The plaintiffs, non-
citizens who entered into the United States through
the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV")
parole program, lost parole status when the
government, via a lengthy and thorough notice
published in the Federal Register, decided to
terminate the CHNV program altogether, determining
that the program no longer served its implementing
purpose. In contrast, for Petitioner's revocation,
there is no evidence to suggest that such a
determination or other finding was made *at all*, and
the evidence in the record strongly suggests it
wasn't.

     Second, the *Doe* court did not address the
regulatory requirements established by 8 C.F.R. §
212.5(e)(2)(i), which implement the parole statute and
illuminate the procedural requirements for termination
of parole. As analyzed above, Part 212.5(e)(2)(i) not
only restates the revocation authority enumerated in §
1182(d)(5)(A), but also clarifies the (admittedly
minimal) procedures the Respondents must follow when
invoking the parole statute's revocation authority.
The Respondents' failure to follow the governing
regulation is equally unlawful. []

     Finally, and perhaps most importantly, the *Doe*
court's interpretation of § 1182(d)(5)(A) reads the
bulk of the revocation clause out of the statute. That
interpretation rests entirely on the fact that the
revocation clause does not include the same "case-by-
case" language. But such a myopic focus on that
omission elides a significant portion of the text of
the revocation clause. The revocation clause in the
parole statute gives the Secretary of Homeland
Security the authority to revoke parole "when the
purposes of such parole shall, in the opinion of the
Secretary . . ., have been served." If Respondents
were not required to make such a determination to
effect termination of parole, then there would be no
reason for this language to have been included in the
statute. This contradicts "one of the most basic
interpretive canons, that a statute should be
construed so that effect is given to all its
provisions, so that no part will be inoperative or

> superfluous, void or insignificant." *Corley v. United*
> *States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed.
> 2d 443 (2009) (cleaned up). Instead, because the
> parole statute (and its implementing regulation)
> require such a preconditional determination to be
> made, the Court enforces it here.

*Bernardo Gabriel B.M.*, 2025 U.S. Dist. LEXIS 233542, at *15-18.

Moreover, this Court also addresses—in the next section—

Petitioner's Fifth Amendment claim, while the First Circuit

expressly avoided any constitutional claims. *Doe v. Noem*, 152

F.4th 272, 284 (1st Cir. 2025) ("At the outset, we must

emphasize that no constitutional claims are involved in this

appeal.").

Here, even assuming that written notice had made its way to

Petitioner, there is no indication in this case that DHS

undertook "'an individualized review' that the purposes of a

particular noncitizen's parole have been met or that the

statutorily-provided reasons for parole no longer exist."

*Darwich v. Kemerling*, No. 1:25-cv-1162, 2026 U.S. Dist. LEXIS

11447, 2026 WL 170801, at *16 (M.D.N.C. Jan. 22, 2026). The

only argument made by the Federal Respondents regarding

individualized review relates to two memoranda issued by Acting

Secretary of Homeland Security Benjamine Huffman. The first

memorandum, dated January 20, 2025, is titled "Exercising

Appropriate Discretion Under Parole Authority." ECF No. 15-2.

This two-page memorandum declared that parole "has been

repeatedly abused by the Executive Branch over the past several
decades" and stated that "[i]t is evident that many current DHS
policies and practices governing parole are inconsistent with
the statute."  ECF No. 15-2 at 1-2.  It instructed DHS to, over
a 60-day period, review its existing parole policies to
determine which were "not strictly in accord with the text and
structure of 8 U.S.C. § 1182(d)(5)" and, pending this review, to
exercise "discretion to pause, modify, or terminate any parole
program" to the extent that they were not promulgated pursuant
to the requirements of the Administrative Procedure Act, to the
extent that they could protect any legitimate reliance
interests, and to the extent that "[d]oing so is otherwise
consistent with applicable statutes, regulations, and court
orders."  *Id.* at 2.  The memorandum further stated that "should
any court disagree with the interpretation of the parole statute
articulated in this memorandum, I clarify that I am also
implementing this policy as a matter of my discretion to deny
parole in any circumstance."  *Id.*

The second memorandum, dated January 23, 2025, was also
issued by Acting Secretary Huffman and was titled "Guidance
Regarding How to Exercise Enforcement Discretion."  ECF No. 15-
3.  It directed DHS and its component agencies to (1) take all
steps to review cases of noncitizens amenable to expedited
removal and consider, in exercising enforcement discretion,

19

whether to apply expedited removal, which may include
termination of active parole status, and (2) for all other
noncitizens who were "granted parole under a policy that may be
paused, modified, or terminated immediately under the January 20
memorandum," to review the noncitizen's parole status to
determine, in exercising enforcement discretion, whether parole
remains appropriate "in light of any changed legal or factual
circumstances." *Id.* at 2. This memo further directed that any
such actions "shall be taken in a manner consistent with
applicable statutes, regulations and court orders. They shall
also be taken in a manner that takes account of legitimate
reliance interests." *Id.*

The Federal Respondents explain that the "Huffman memoranda
did not themselves terminate any parole programs or grants."
ECF No. 15 at 5.  However, they take the position that "the
January 20 and January 23 Huffman Memos, which directed
termination of any parole policies that did not comply with
Section 1182(d)(5), provide sufficient explanation for
subsequent decisions that the purpose for which parole was
authorized had been accomplished, or that neither urgent
humanitarian reasons nor significant public benefit warranted
the Petitioner's continued presence in the United States."  ECF
No. 15 at 11.  However, the Court finds that two memoranda
directing review of parole policies and termination after review

of potential policies, is not enough to show that anyone with
sufficient authority made a determination that the purpose for
which Petitioner was paroled was accomplished, or that neither
urgent humanitarian reasons nor significant public benefit
warranted the Petitioner's continued presence in the United
States.

Instead of individualized review, the Federal Respondents
argue that they provided written notice of the revocation of
parole—and that this is sufficient on its own.  This Court finds
that mere notice is not sufficient, and in doing so follows the
analysis present in several other cases across the country.
*Villegas-Gonzalez v. Lynch*, No. 25-CV-1795, 2025 U.S. Dist.
LEXIS 268428, 2025 WL 3767939, at *11 (W.D. Mich. Dec. 31, 2025)
(collecting cases); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123,
1144-1146 (D. Or. 2025) (grant of habeas after finding, in an
analysis of whether the detention of petitioner violated the
Administrative Procedure Act, that parolee must receive written
notice, and that authorized official must find that humanitarian
reasons and public benefit no longer warrant a noncitizen's
presence in the country); *Padilla v. U.S. Immigr. & Customs
Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The
Supreme Court has consistently held that non-punitive detention
violates the Constitution unless it is strictly limited and,
typically, accompanied by a prompt individualized hearing before

21

a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals."); *Contreras v. Lynch*, No. 1:25-cv-1517, 2026 U.S. Dist. LEXIS 8373, 2026 WL 113478, at *5 (W.D. Mich. Jan. 15, 2026) ("there is nothing before the Court to suggest that the humanitarian reason or public benefit that justified Petitioner's parole no longer applies. Indeed, Respondents make no argument about whether the requirements for termination of parole in § 1182(d)(5)(A) and its regulations have been satisfied."); *Castellon v. Kaiser*, No. 1:25-cv-00968 JLT EPG, 2025 U.S. Dist. LEXIS 157841, 2025 WL 2373425, at *13-16 (E.D. Cal. Aug. 14, 2025) (in the context of a motion for a preliminary injunction, finding a case-by-case analysis is needed to revoke parole); *Noori v. Larose*, No. 25-cv-1824, 2025 U.S. Dist. LEXIS 194953, 2025 WL 2800149, at *35-36 (S.D. Cal. Oct. 1, 2025) ("Even if Petitioner was not granted humanitarian parole, courts have found—and this Court agrees in finding—that revocation of that parole similarly requires an individualized determination."); *Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (In undertaking an analysis of likelihood of success on the merits: "This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole must attend to the reasons an individual [noncitizen]

22

received parole." (internal quotation marks and citation omitted)).

### B. Process Due Under the Fifth Amendment

The Federal Respondents contend that the Fifth Amendment does not afford a right to a hearing regarding revocation of a noncitizen's parole. ECF No. 10 at 7. In support of their argument, the Federal Respondents point out that the Second Circuit has held that due process does not require a hearing on revocation of parole, where Congress did not provide one. *Id.* (citing *Wong Hing Fun v. Esperdy*, 335 F.2d 656, 657 (2d Cir. 1964) and *Ofosu v. McElroy*, 98 F.3d 694, 700 (2d Cir. 1996)). The Second Circuit cases cited, however, are very fact-specific. In *Wong Hing Fun*, the appellants were granted temporary parole, then "absconded and failed to depart on their vessels" and, when their paroles were revoked, argued that the order revoking parole "was illegal because it was entered without a full hearing." *Wong Hing Fun*, 335 F.2d at 657. The Second Circuit held that there was "no basis for appellants' contention that due process requires a hearing on revocation of parole, even though Congress did not provide one." The court said that the "Fifth Amendment does not affect, in any degree, Congress' plenary power over exclusion procedures." *Id.* In *Ofosu*, the petitioner-appellant was temporarily paroled into the United States, ordered "excluded" and refused to appear because he was

23

worried his parole would be revoked and that he would be
detained pending his appeal to the Second Circuit, where he
sought a stay of the exclusion order. *Ofosu*, 98 F.3d. The
Second Circuit found that Ofosu's "breach of parole is not
contestable" and that the petitioner had "no constitutional
right to initial admission to the United States." *Id.* at 700.
The Second Circuit did not address whether the Fifth Amendment
applied to the petitioner's situation, though the court did find
that petitioner's "parole is a matter of the Attorney General's
discretion (and of the opinion of those she appoints) and may be
ended without hearings or special forms." *Id.* On the other
hand, the Second Circuit has also indicated that, in certain
situations and based upon different facts, in order to bring 8
U.S.C. § 1182(d)(5) "into harmony with the Constitution," a
hearing may be required. *See U.S. ex rel. Paktorovics v. Murff*,
260 F.2d 610, 614 (2d Cir. 1958).[5] Today, the question before
the Court is not whether a hearing needed to be held in order to
revoke Petitioner's parole and detain him on that basis alone.

---

[5] Petitioner analogizes his case to *Paktorovics*, arguing that he
was invited to apply for entry via DHS's CBP One mobile
application from outside the country in the same way that
Paktorovics was invited. ECF No. 14 at 10. The Federal
Respondents oppose this analogy, and point out that the CBP One
application worked as a scheduling function, not an invitation
for parole. ECF No. 15 at 9. The Federal Respondents
distinguish Petitioner's situation from that of a parolee who
entered through a categorical program. *Id.*

Rather, the Court asks whether Petitioner's detention, based upon notice of a revocation of parole that may have reached Petitioner and nothing more, violates due process.

The Federal Respondents also point out that the Supreme Court has held that Congress is entitled to set the conditions for a noncitizen's lawful entry into this country, and that, as a result, a noncitizen "at the threshold of initial entry . . . has no entitlement to procedural rights other than those afforded by statute." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020). "Many courts… have interpreted *Thuraissigiam* as limited to its facts, which involved an arriving alien who claimed he was entitled to additional administrative review of his asylum claim under the Fifth Amendment's Due Process Clause." *Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, 2025 WL 3551972, at *42 (D. Vt. Dec. 11, 2025); *see also Petrova v. U.S. Dep't of Homeland Sec.*, 2025 U.S. Dist. LEXIS 190805, 2025 WL 2772764, at *68 (D. Vt. Sept. 26, 2025) (limiting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) interpretation to an "arriving alien who claimed he was entitled to additional administrative review of his asylum claim under the fifth Amendment's Due Process Clause" and denying a motion to dismiss a noncitizen's due process claim arising from the revocation of her visa and subjection to criminal proceedings); *Mata Velasquez*

25

*v. Kurzdorfer*, 794 F. Supp. 3d 128, 151 (W.D.N.Y. 2025)

(interpreting *Thuraissigiam* as "foreclos[ing] the argument that

an [arriving alien] has due process rights beyond those provided

by statute concerning the process for deciding whether or not he

[or she] will be *admitted* to this country") (emphasis in

original).  Here, Petitioner is not challenging his removal

proceedings but, rather, his detention after the revocation of

his parole.

    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a

three-part test that the Second Circuit has applied when

determining the adequacy of process in the context of civil

immigration confinement.  *Velasco Lopez v. Decker*, 978 F.3d 842,

851 (2d Cir. 2020).  Under *Mathews*, the three factors are:

"[f]irst, the private interest that will be affected by the

official action; second, the risk of an erroneous deprivation of

such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural

safeguards; and finally, the Government's interest, including

the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would

entail."  *Mathews*, 424 U.S. at 335.

    On the first prong, Petitioner's private interest in

"freedom from imprisonment" is strong.  *See Velasco Lopez*, 978

F.3d at 851 ("the most significant liberty interest there is—the

26

interest in being free from imprisonment." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Here, "Respondents granted Petitioner parole into the United States, determining that Petitioner was not a flight risk or danger" but "have now detained Petitioner, and there is no dispute that Petitioner has a significant private interest in avoiding detention[.]" *Delgado v. Raycraft*, No. 1:25-cv-1723, 2026 U.S. Dist. LEXIS 12016, 2026 WL 177629, at *18-19 (W.D. Mich. Jan. 22, 2026); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").

On the second prong, the Court weighs the risk as high because "there is a high risk of erroneously depriving Petitioner of his freedom if Petitioner does not receive an individualized determination regarding his parole." *Delgado*, 2026 U.S. Dist. LEXIS 12016 at *19. Moreover, as other courts have observed, it is odd to reverse course and suddenly revoke parole when the initial grant of parole came from a more careful process. *See, e.g., Walizada v. Trump*, No. 2:25-cv-00768, 2025 U.S. Dist. LEXIS 256630, 2025 WL 3551972, at *51 (D. Vt. Dec. 11, 2025) (observing, in the context of a petitioner granted

parole from Afghanistan through "Operation Allies Welcome,"
that: "Prior to being granted parole, Mr. Walizada underwent
rigorous screening, including biometric and biographic
screening.  Despite this invitation from and extensive vetting
by the United States government, the Federal Respondents now
appear to deem Mr. Walizada unfit for parole."); *see also
Materano v. Arteta*, 2025 U.S. Dist. LEXIS 179608, 2025 WL
2630826, at *40 (S.D.N.Y. Sep. 9, 2025) (Granting habeas
petition, finding on the second *Mathews* factor that "re-
detention without any individualized assessment such as 'any
change in circumstances' since the government released him on
parole 'establishes a high risk of erroneous deprivation of his
protected liberty interest.'" (internal citation omitted)).

On the third prong, the Second Circuit has recognized the
government's "legitimate" and "well-established" interests in
the immigration context in "ensuring the noncitizen's appearance
at proceedings" and in "protecting the community from
noncitizens" who are dangerous.  *Black v. Dir. Thomas Decker*,
103 F.4th 133, 152 (2d Cir. 2024).  Here, however, where the
Federal Respondence advance no other, specific interests, and
where the Petitioner does not have a criminal record and has
regularly complied with and appeared for ICE check-ins and court
hearings, "[t]here is no indication that he is a flight risk or
presents a danger to the community, which strike at the core,

28

guiding goals for parole, and [the Federal] Respondents have not
supplied any additional information to the contrary." *See
Kirboga v. Larose*, No. 25-cv-3706-GPC-DDL, 2025 U.S. Dist. LEXIS
268946, 2025 WL 3779426, at *13 (S.D. Cal. Dec. 31, 2025) (also
finding that Respondents "failed to demonstrate a significant
interest in Petitioner's detention" where they did not provide
Petitioner with "individualized notice and reasoning prior to
his arrest and detention" and have "presented no legitimate
reason for why those decisions were made."); *see also Pineda-
Berrios v. Lyons*, No. 1:25-cv-2332 (LMB/LRV), 2026 U.S. Dist.
LEXIS 29194, 2026 WL 384159, at *20-21 (E.D. Va. Feb. 11, 2026)
(Although the federal respondents "have a weighty interest in
efficient administration of the immigration laws, they remain
subject to an obligation to effectuation [the petitioner's]
detention in a manner that comports with due process" and
petitioner must be released from custody immediately because
"[a]lthough the federal respondents have discretion to release a
noncitizen on parole, that does not mean they can revoke that
parole on a mere whim, which is what has happened in this case."
(internal quotation marks and citations omitted)).

Accordingly, the Court finds that Petitioners' due process
rights were violated, and the habeas petition must be granted.
*Delgado*, 2026 U.S. Dist. LEXIS 12016 at *20.

**C. Remedy**

Generally, writs of habeas corpus are used to request release from custody. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779-80 (2008) (noting that at "common-law habeas corpus was, above all, an adaptable remedy."). District courts have ordered immediate release from custody in other cases that addressed petitions based upon the unlawful revocation of parole. *See, e.g., Bakhtani v. Marich*, No. 25-cv-1500-LJV, 2026 U.S. Dist. LEXIS 25351, 2026 WL 322625, at *7 (W.D.N.Y. Feb. 6, 2026) ("Because there is no evidence that [the petitioner's] parole was properly terminated, and because his abrupt and continuing detention without notice or a meaningful opportunity to be heard violates his right to due process, there is no lawful basis for [the petitioner's] continued detention. And because there is no lawful basis for his detention, this [c]ourt joins the numerous district courts that have followed its conclusion in *Mata Velasquez*: that the only proper remedy is immediate release.").

Because the Court has found that Petitioner is unlawfully detained for the reasons discussed above, the Court grants

30

2:26-cv-00013-wks    Document 18    Filed 02/19/26    Page 31 of 31

Petitioner's petition for a writ of habeas corpus. The Court orders the Federal Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole.[6]

### Conclusion

WHEREFORE, it is ORDERED that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is GRANTED. It is further ORDERED that the Federal Respondents shall release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole.

DATED at Burlington, in the District of Vermont, this 19th day of February 2026.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge

---

[6] Again, other district courts have ordered similar relief when presented with similar petitions. *See, e.g., Yasin v. Larose*, No. 25cv3378-BTM-DDL, 2025 U.S. Dist. LEXIS 260086, 2025 WL 3638140, at *4-5 (S.D. Cal. Dec. 15, 2025) ("Respondents revoked Petitioner's parole without complying with 8 U.S.C. § 1182(d)(5)(A). Respondents have not submitted evidence showing that the Secretary or a designee found that the purposes of Petitioner's parole have been served. The revocation of Petitioner's parole is thus neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the demands of due process. . . . For the reasons stated, the Court grants counts found one and two of the Petition For A Writ of Habeas Corpus…Respondents are ordered to immediately release Petitioner from custody under the previous conditions imposed for his parole.").